Michelle NELSON, and all others similarly situated, Janis Ideson, and all others similarly situated, Donald Lauer, and all others similarly situated, Plaintiffs,

v.

CITIBANK (SOUTH DAKOTA) N.A., First National Bank of Omaha, Bank One, Columbus, N.A., MBNA American Bank, N.A. f/k/a MBNA America, N.A., Defendants.

Michael B. TIKKANEN, and all others similarly situated, Barry Rosenberg, and all others similarly situated, Plaintiffs.

v.

CITIBANK (SOUTH DAKOTA) N.A., MBNA American Bank, N.A., f/k/a MBNA America, N.A., Defendants.

Civ. Nos. 4–92–286, 4–92–287.

United States District Court,
D. Minnesota,
Fourth Division.

May 28, 1992.

William H. Crowder, Mark Reinhardt, Reinhardt & Anderson, St. Paul, for plaintiffs Michelle Nelson, Janis Ideson and Donald Lauer.

Charles H. Johnson, Johnson Law Office, St. Paul, for plaintiffs Michael B. Tikkanen and Barry Rosenberg.

Lawrence C. Brown, James L. Volling, Faegre & Benson, Minneapolis, for defendants.

Arnold M. Lerman, Christopher R. Lipsett, John B. Bellinger, Wilmer, Cutler & Pickering, Washington, D.C., for defendant Citibank (South Dakota) N.A.

John L. Warden, Richard J. Urowsky, Lori S. Sherman, Sullivan & Cromwell, New York City, for defendant MBNA America Bank, N.A.

## MEMORANDUM AND ORDER

MacLAUGHLIN, Chief Judge.

This matter is before the Court on plaintiffs' motions to remand. The motion will be denied.

**1.** Although the two actions are technically separate and the two sets of plaintiffs are represented by different counsel, the plaintiffs make the same claims and have submitted one set of papers. Defendants, too, raise the same defenses and have submitted one set of papers. Therefore, the plaintiffs and defendants in the two cases will be referred to collectively in this memorandum. Where a distinction between the two sets of plaintiffs is necessary, they will be referred to as the Nelson plaintiffs and the Tikkanen plaintiffs.

## FACTS

Plaintiffs in these two related actions are credit card customers of the defendant banks.[1] Defendants are national banks located in states other than Minnesota. Plaintiffs, all residents of Minnesota, brought suit in state court, challenging defendants' practice of charging late fees and overlimit fees in addition to periodic interest charges. The fees assessed by the defendant banks are permitted by the laws of the states in which the defendants are located. In their original complaints, plaintiffs alleged that defendants assessed fees in violation of Minn.Stat. § 48.185(4), that defendants combined the unpaid fees with unpaid principal, and that defendants then imposed interest on the whole, resulting in a usurious rate of interest in violation of Minn.Stat. § 48.195. Plaintiffs asked the Court to certify a class of similarly situated plaintiffs, to declare that defendants' practice of assessing late and overlimit fees violated section 48.185(4), to enjoin defendants from engaging in that practice in the future, and to award plaintiffs section 48.-195's penalty for usurious interest paid. Plaintiffs also asked for an award of costs and attorney's fees.

Defendants removed the actions to federal court, on the ground that a substantial federal question is a necessary element of plaintiffs' state law claims.[2] Subsequent to removal, plaintiffs amended their complaints. In the amended complaints, plaintiffs again allege that defendants charged late and overlimit fees in violation of Minn. Stat. § 48.185(4), combined the unpaid fees with unpaid principal, and imposed interest on the whole; however, they do not allege that the resulting interest was usurious under Minn.Stat. § 48.195. Nelson Am.

**2.** Defendants also assert that diversity jurisdiction exists in this case because, although the claims of the individual plaintiffs fall far short of the jurisdictional requirement, plaintiffs seek attorneys' fees that would exceed $50,000. Plaintiffs argue that attorneys' fees cannot be used to satisfy the amount in controversy requirement in a class action. Because the Court concludes that removal is proper on federal question grounds, it does not reach the diversity issue.

Compl. ¶ 49, 50; Tikkanen Am.Compl. ¶ 35, 36. The amended complaints raise two causes of action, for deceptive trade practices and unjust enrichment. Plaintiffs ask the Court to certify a class of similarly situated plaintiffs, declare that defendants' practice of assessing late and overlimit fees violates Minn.Stat. § 48.185, enjoin defendants from engaging in that practice in the future, award plaintiffs damages under Minnesota's deceptive trade practices statute, and award plaintiffs costs and attorney's fees. Although plaintiffs omitted references to Minnesota's statutory usury penalty in their amended complaint, they ask the Court to award them the illegal fees charged or collected by defendants, as well as all interest charged on such fees.[3] Plaintiffs now move to remand the actions to state court on the grounds that their complaints present no federal question.

DISCUSSION

Removal of a state court action on the basis of federal question jurisdiction is appropriate where the action arises under the Constitution, laws, or treaties of the United States, and therefore could have been brought in federal district court in the first place. 28 U.S.C. § 1441(b). The federal question must appear on the face of the plaintiff's complaint. "Under the 'well-pleaded complaint' doctrine, the plaintiff is master of his claim and may avoid federal removal jurisdiction by exclusive reliance on state law." *M. Nahas & Co. v. First Nat'l Bank of Hot Springs*, 930 F.2d 608, 611 (8th Cir.1991) (citing *Caterpillar v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987)). The removing party bears the burden of establishing that the federal court has jurisdiction; if any doubts remain as to the right of removal, the case should be remanded. *Bor–Son Building Corp. v. Heller*, 572 F.2d 174, 181 n. 13 (8th Cir.1978); *Abing v. Paine, Webber, Jackson & Curtis*, 538 F.Supp. 1193, 1195 (D.Minn.1982).

## I. *The Effect of Plaintiffs' Amended Complaints*

■ As noted above, plaintiffs amended their complaints subsequent to removal. Plaintiffs assert that whether their complaints present a federal question must be determined from the face of the amended complaints. Defendants assert that whether plaintiffs' complaints present a federal question must be determined from the face of plaintiffs' original complaints.

■ The settled rule is that the propriety of removal is determined by the record as it stands at the time the petition for removal is filed. *Hatridge v. Aetna Casualty & Surety Co.*, 415 F.2d 809, 814 (8th Cir. 1969); *Butts v. Hansen*, 650 F.Supp. 996, 998 (D.Minn.1987). Federal jurisdiction is not defeated by a plaintiff's post-removal amendment to eliminate the federal claims upon which federal jurisdiction is premised. *Ching v. Mitre Corp.*, 921 F.2d 11, 13 (1st Cir.1990); *Henry v. Independent American Sav. Ass'n*, 857 F.2d 995, 998 (5th Cir.1988); *see* 6 Charles A. Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure* § 1477 at 562–63 (2d ed. 1990). Plaintiffs argue, however, that the settled rule has been displaced by the decision of the United States Supreme Court in *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

In *Carnegie–Mellon*, the plaintiffs filed a complaint in state court alleging violations of federal age discrimination laws, as well as state common law claims. After the defendants removed the action to federal court, the plaintiffs moved to amend their complaint to delete the federal age discrimination claim and to remand the case to state court on the ground that the amendment would eliminate their sole federal claim. The district court granted both motions. The court of appeals denied the defendants' application for a writ of mandamus, and the defendants appealed the

---

**3.** The Tikkanen amended complaint specifically labels the award of fees and interest on the fees restitution for unjust enrichment; while the Nelson amended complaint does not label the award of fees and interest on the fees as restitution, it appears that the Nelson plaintiffs rest their claim for the fees and interest on the same ground.

appellate court's decision to the United States Supreme Court.

The issue before the Court was "whether a federal district court has discretion under the doctrine of pendent jurisdiction to remand *a properly removed case* to state court when all federal-law claims in the action have been eliminated and only pendent state-law claims remain." *Carnegie–Mellon*, 484 U.S. at 345, 108 S.Ct. at 616 (emphasis added). The Court concluded that a federal district court did have that discretion. In reaching this result, the Court noted that the pendent jurisdiction doctrine is a doctrine of discretion designed to enable courts to handle cases involving state law claims in the way that best furthers the interests of economy, convenience, fairness, and comity. Remanding an action could in some circumstances better accommodate those interests than dismissing the action would. For example, dismissing the action could work injustice to plaintiffs in cases where the statute of limitations expires before the federal court has determined that it should relinquish jurisdiction. In addition, because dismissal would require the parties to refile their papers in state court and the state court to reprocess the case, remand would in most cases be the more efficient and economical alternative.

The Court dismissed the defendants' argument that giving district courts discretion to remand cases involving pendent state-law claims would allow plaintiffs to use manipulative tactics to defeat removal. This concern, the Court reasoned, did not justify a categorical prohibition on the remand of such cases, because in exercising its discretion, the district court could consider whether the plaintiff has engaged in manipulative tactics and balance that factor against factors weighing in favor of remand.

Because *Carnegie–Mellon* deals with a district court's discretion to remand a properly removed case, it does alter the established rule that the propriety of removal must be determined by reference to the record at the time of removal. If plaintiffs' original complaints raised a federal cause of action and if their amended complaints eliminated that cause of action, then the Court would have discretion, under *Carnegie–Mellon*, to remand plaintiffs' remaining state law claims. Whether the Court has federal question jurisdiction over plaintiffs' claims, however, is not a matter of discretion, and must be determined by reference to the record as it stood at the time of removal—that is, by reference to plaintiffs' original complaints.

## II. *Plaintiffs' Claims to Recover Interest*

■ Under the well-pleaded complaint rule, there is no right of removal where a federal question arises from a possible defense to the action. This is true even where federal law or principles of preemption provide a complete defense to the state law claims. *M. Nahas*, 930 F.2d at 611. There is, however, an exception to the well-pleaded complaint rule. An action that asserts only state law claims may nonetheless be subject to removal where federal statutes "so completely preempt a particular area, that any civil complaint raising this select group of claims is necessarily federal." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987). Defendants point out that plaintiffs' complaints allege that defendants imposed a usurious rate of interest in violation of Minn.Stat. § 48.195 and ask the Court to award them damages under that statute. Defendants argue that state law usury claims against national banks are completely preempted by the National Bank Act, 12 U.S.C. § 21 *et seq.*, and that plaintiffs' claims are therefore necessarily federal.

In support of their position, defendants rely on *M. Nahas, supra.* In *M. Nahas*, the plaintiff sued a national bank, alleging that the bank had charged an interest rate that was usurious under Arkansas law. The district court dismissed the complaint, holding that plaintiff's usury claim was necessarily federal, that defendant had properly removed the case from state court, and that plaintiff's action was barred by the two-year statute of limitations for usury actions under 12 U.S.C. § 86. The

United States Court of Appeals for the Eighth Circuit affirmed.

The court first noted that for more than a century, Congress has exercised its preemptive power to regulate national banks. While Congress has, in 12 U.S.C. § 85, adopted the policy of allowing national banks to charge the interest rate allowed by the law of the state in which the bank is located, Congress has also, in 12 U.S.C. § 86, prescribed the remedies available against a national bank that charges usurious rates. Relying on its earlier holdings, the court reiterated that "since Congress has provided a penalty for usury, that action preempts the field and leaves no room for varying state penalties." *Id.* at 610 (citations omitted). Because Congress had created an exclusive federal remedy for usury claims against national banks, the court continued, the plaintiff's attempts to couch its complaint wholly in state law terms was unavailing. The plaintiff's claim that the defendant had charged unlawful interest rates was necessarily federal in nature and was therefore properly removed. *Id.* at 612.

Despite the apparent applicability of *M. Nahas*, plaintiffs argue that it does not control the case at bar, because the central issue presented by plaintiffs' claims is not whether defendants charged a usurious rate of interest, but whether the defendants violated Minn.Stat. § 48.185 by charging late and overlimit fees. Plaintiffs assert that because their complaint seeks recovery under Minnesota statutory and common law, and not under 12 U.S.C. § 85, their claim cannot be characterized as federal in nature. In making this argument, plaintiffs have misconstrued the holding of *M. Nahas*. Under *M. Nahas*, the issue is not what theories plaintiffs name in their complaints or what the central issue of their claims is; rather, the issue is whether plaintiffs seek a remedy for usurious interest paid. If they do, then their claims arise, at least in part, from federal law and removal is proper.

The Court concludes that plaintiffs' original complaints are removable under *M. Nahas*. The complaints specifically allege that defendants' practice of adding unpaid late and overlimit fees to unpaid principal and imposing interest on the whole resulted in a "usurious rate of interest" under Minn.Stat. § 48.195. More significantly, the complaints ask the court to apply the usury penalties of Minn.Stat. § 48.195 by entering judgment for plaintiffs in the amount of two times the interest paid, plus the entire interest carried by the evidence of debt, which is deemed a forfeiture under section 48.195. Because at the time of removal plaintiffs sought a remedy for usurious interest paid, their complaints raise claims that are necessarily federal in nature and were therefore properly removed under *M. Nahas*. Therefore, the Court will deny plaintiffs' motion to remand.

III. *Plaintiffs' Claims to Recover Late and Overlimit Fees*

■ Defendants argue that plaintiffs' claims for late and overlimit fees are, like their usury claims, completely preempted by the National Bank Act and are therefore necessarily federal in nature. The crux of defendants' argument is that late and overlimit fees are interest for the purposes of sections 85 and 86 of the National Bank Act. If late and overlimit fees are interest, then plaintiffs' action to recover late and overlimit fees seeks to impose a penalty for usurious interest charged and is, under *M. Nahas*, a federal claim subject to removal.[4] Plaintiffs strenuously dispute that late and overlimit fees are interest; plaintiffs argue that because the challenged fees are not interest, they fall outside, and are not preempted by, the federal statute.

The argument regarding the definition of "interest rate" is at the heart of these actions. Defendants assert that they are not bound by Minnesota statutes governing late and overlimit fees but by the statutes of the states in which they are located.

---

**4.** If defendants' argument is correct, as the Court concludes it is, then removal would be appropriate even if the Court decided the removal issue with reference to plaintiffs' amended complaints.

They base this assertion on *Marquette Nat'l Bank of Minneapolis v. First Omaha Service Corp.*, 439 U.S. 299, 99 S.Ct. 540, 58 L.Ed.2d 534 (1978), in which the United States Supreme Court held that, under section 85, a national bank located in Nebraska could charge its Minnesota credit card customers the maximum interest rate allowed by Nebraska law, notwithstanding a Minnesota statute setting lower maximum rates. *Marquette* holds, in other words, that national banks may "export" the interest rates of the states in which they are located, and impose those rates on citizens of other states. Defendants' position is that late and overlimit fees are part of a state's statutory interest rate and that, under *Marquette*, they may export and apply to their Minnesota customers the laws of their home states. Plaintiffs' position is that late and overlimit fees are not "interest" and therefore may not be exported and applied to Minnesota customers.

Section 85 of the National Bank Act provides in part:

> Any association may take, receive, reserve, and charge on any loan ... *interest at the rate* allowed by the laws of the State ... where the bank is located, or at a *rate of 1 per centum in excess of the discount rate* on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and no more....

12 U.S.C. § 85 (emphasis added).

Section 86 of the Act provides in part:

> The taking, receiving, reserving, or charging a *rate of interest* greater than is allowed by section 85 of this title, when knowingly done, shall be deemed a forfeiture of the entire interest which the ... evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid ... may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid....

12 U.S.C. § 86 (emphasis added).

Sections 85 and 86 do not define the terms "interest" and "rate of interest."

Defendants assert, however, that their meaning can be ascertained by reference to 12 U.S.C. § 86a. Congress enacted section 86a as part of the Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDA) in March 1980. The section governed interest rates on agricultural and business loans, but applied only to loans made between April 1, 1980 and the earlier of April 1, 1983 or the date upon which a state enacted a law overriding the section. Pub.L. No. 96–221, § 511, 512, 94 Stat. 132, 164 (1980). In October 1980, Congress amended section 86a to include definitions of its critical terms. As amended, the section provided that "the term 'interest' includes any compensation, however denominated, for a loan." Pub.L. No. 96–399 § 324(b), 94 Stat. 1614, 1648 (1980). Defendants argue that section 86a is a companion provision to sections 85 and 86 and that its definition of interest should therefore be imported into the other sections.

The Court finds this argument to be flawed, for several reasons. First, by its terms, the applicability of section 86a was limited to loans made during a three-year window period that expired in 1983. Because the statute has expired, its current applicability is doubtful. Second, although section 86a defined interest broadly as any compensation for a loan, it defined loan narrowly as all "extensions of credit made by or to any person or organization for business or agricultural purposes." Pub.L. No. 96–399 § 324(b), 94 Stat. 1614, 1648 (1980). The consumer credit card transactions underlying the instant actions do not appear to be extensions of credit made for business or agricultural reasons. Finally, the amendment to section 86a expressly provided that the definitions it set forth were for "the purpose of this part," which was titled "Part B, Business and Agricultural Loans." Pub.L. No. 96–399 § 324(b), 94 Stat. 1614, 1648 (1980); Pub.L. No. 96–221 § 511, 512, 94 Stat. 132, 164. Sections 85 and 86 were not within Part B. Because there is no apparent link between the definition of interest in section 86a and the use of the term in sections 85 and 86,

defendants may not import section 86a's definition into sections 85 and 86.

Defendants go on, however, to argue that courts have uniformly taken an expansive view of "interest," applying sections 85 and 86 to numerous charges other than periodic interest rates. *See, e.g., McAdoo v. Union Nat'l Bank,* 535 F.2d 1050, 1056 (8th Cir.1976) (compensating balance requirements); *Cronkleton v. Hall,* 66 F.2d 384, 387 (8th Cir.), *cert. denied,* 290 U.S. 685, 54 S.Ct. 121, 78 L.Ed. 590 (1933) (bonus or commission paid to lender); *Northway Lanes v. Hackley Union Nat'l Bank & Trust Co.,* 464 F.2d 855, 863 (6th Cir. 1972) (closing costs); *Schumacher v. Lawrence,* 108 F.2d 576, 577 (6th Cir.1940) (taxes and recording fees); *Panos v. Smith,* 116 F.2d 445 (6th Cir.1940) (same); *American Timber & Trading Co. v. First Nat'l Bank,* 690 F.2d 781 (9th Cir.1982) (compensating balance requirements); *Kenty v. Bank One, Columbus, N.A.,* No. C2–90–709, 1992 WL 170605 (S.D.Ohio Apr. 23, 1992) (excessive and unauthorized insurance premiums).[5] For the purposes of the instant actions, the most important of these cases is *Fisher v. First National Bank,* 548 F.2d 255 (8th Cir.1977).

In *Fisher,* the plaintiff was an Iowa credit-card holder who challenged the finance charges assessed by the national bank that issued the card. The plaintiff alleged that the method in which the bank computed interest on his account and the imposition of a flat fee for cash advances were usurious under sections 85 and 86. Anticipating the United States Supreme Court's holding in *Marquette,* the Eighth Circuit first held that the national bank was entitled to charge the Iowa resident the rates allowed by the laws Nebraska, the state in which the bank was located. *Fisher,* 548 F.2d at 257–58. The court then went on to determine whether the charges were permissible under Nebraska law. In arguing that the

method of computing interest and the flat fee were not permissible, the plaintiff referred to Nebraska statutes governing loans made by banks. The court, however, noted that even if Nebraska banks would not be allowed to assess the fees charged the plaintiff, Nebraska small loan companies would be allowed both to compute the interest as the defendant had done and to charge the flat fee. Therefore, the court held that the fees were not usurious under sections 85 and 86.

In reaching this result, the court relied on the "most favored lender doctrine." The court explained the doctrine as follows:

> 12 U.S.C. § 85 was designed by Congress to place national banks on a plane of at least competitive equality with other lenders in the respective states, and, indeed, to give to national banks a possible advantage over state banks in the field of interest rates. Thus, a national bank is not limited to the interest rate that a state bank may charge with respect to a particular type of loan if another lender in the state is permitted to charge a higher rate of interest on the same type of loan. In that situation the national bank may charge the higher rate.

*Fisher,* 548 F.2d at 259. Noting that both the United States Supreme Court and the Office of the Comptroller of the Currency (OCC) had recognized the doctrine, the court allowed the national bank to "borrow" the Nebraska laws applicable to small loan companies, even though they were not applicable to state-chartered banks.

In addition to *Fisher* and other cases treating fees other than periodic interest charges as "interest" for the purpose of section 85 and 86, defendants rely on agency determinations reaching the same result. In a series of staff opinion letters dating back to 1980, the OCC has taken the

---

**5.** While these courts have applied sections 85 and 86 to numerous charges in addition to periodic interest charges, they have not explicitly analyzed the statutory language of those sections. Some, however, have noted that because any flat fee extracted by a lender reduces the amount of principal available to the borrower, charging a flat fee in addition to the maximum

rate of interest allowed by law results in an effective interest rate above the legal maximum. *See, e.g., American Timber & Trading Co.,* 690 F.2d at 787, *Panos,* 116 F.2d at 447. Thus, these courts look beyond the label attached to the fee by the lender to determine the effect of the charge on the interest rate.

position that late fees and other flat charges are "interest." Affidavit of Lawrence C. Brown, Letter from Richard V. Fitzgerald, Director, OCC Legal Advisory Services Division (Nov. 24, 1980); Letter from Robert B. Serino, OCC Deputy Chief Counsel (Policy) (Aug. 11, 1988); Letter from William P. Bowden Jr., OCC Chief Counsel (Feb. 4, 1992). Both the Supreme Court and the Eighth Circuit have held that the OCC's interpretation of the National Banking Act is entitled to great deference. *Clarke v. Securities Indus. Ass'n,* 479 U.S. 388, 403–04, 107 S.Ct. 750, 759, 93 L.Ed.2d 757 (1987) (citations omitted); *Independent Bankers Ass'n of America v. Clarke,* 917 F.2d 1126, 1127 (8th Cir.1990).

Plaintiffs' response to this rather overwhelming contrary authority is two-fold. First, they point to *Greenwood Trust Co. v. Massachusetts,* 776 F.Supp. 21, 37 (D.Mass.1991), in which the district court concluded that for the purposes of section 521 of DIDA, 12 U.S.C. § 1831d, the terms "rates" and "interest rates" did not include credit card late fees, but applied only to periodic interest charges. Section 1831d governs the interest rates that state-chartered banks may charge; the statute was intended to override overly restrictive state usury laws by allowing state banks to charge interest at one percent over the Federal Reserve rate, or "at the rate allowed by the laws of the State ... where the bank is located, whichever may be greater." 12 U.S.C. § 1831d. Thus, the language of section 1831d tracks the language of section 85, but applies the language to state banks rather than to national banks.

The issue in *Greenwood Trust* was whether a state-chartered bank located in Delaware could export Delaware's liberal laws regarding late fees and apply them to credit card customers in Massachusetts, which had more protective laws. The *Greenwood Trust* court rejected the argument that the "rate allowed by the laws of the State" included any charge or fee that affects a lender's economic return, holding that Delaware's laws regarding credit card late fees could not be exported under sec-

tion 1831d. The court rested this holding on the language of section 1831d, the legislative history of the section, and on the policies underlying federal regulation of state banking.

Plaintiffs place great emphasis on the *Greenwood Trust* decision, because in interpreting the language of section 1831d, the court looked to the identical language of section 85. The court stated that the plain meaning of the terms "rates" and "interest rates" in the two sections did not indicate that the terms carried the expansive meaning for which the defendants argued. The court did not cite *Fisher* or most of the other cases relied upon by the defendants here. Although the court noted that the Sixth Circuit had applied section 85 to closing costs in *Northway Lanes,* it dismissed the significance of that case on the grounds that the Sixth Circuit did not determine whether the closing costs were "interest" or some other aspect of "rates." *Greenwood Trust,* 776 F.Supp. at 21.

In the Court's view, plaintiffs' reliance on *Greenwood Trust* is misplaced, for several reasons. First and most obviously, the *Greenwood Trust* court was considering the meaning of a different statute; the court's determination that "rates" and "interest rates" did not include fees other than periodic interest charges in the context of section 1831d has limited value here. Second, to the extent that the *Greenwood Trust* court analyzed section 85, its conclusions regarding that section conflict with the Eighth Circuit's conclusion in *Fisher.* The *Fisher* court's decision to apply section 85 to charges other than periodic interest charges is clearly binding on this Court. Third, the issue in *Greenwood Trust* was whether Massachusetts' law on late fees was preempted by section 1831d. Thus, the court was required to scrutinize the legislative history of section 1831d to determine whether Congress intended to preempt state laws regarding late fees. The legislative history of section 1831d, enacted in 1980, does not bear on the legislative history of the National Banking Act,

enacted in 1864.[6] In addition, the *Greenwood Trust* court itself noted that because that case involved competition between state-chartered banks of different states rather than competition between state-chartered banks and national banks, the policies underlying the National Bank Act were not implicated. *Greenwood Trust*, 776 F.Supp. at 33–34.

Plaintiffs' second response to the wealth of authority holding against their view is to point to law review articles critical of *Marquette*. The thrust of these commentaries is that *Marquette* opened the door to complete displacement of state consumer credit protections; they argue that extending *Marquette* to apply to state legislation of credit terms other than periodic interest rates is unwise and unwarranted. *See, e.g.,* Robert A. Burgess & Monica Ciolfi, *Exportation or Exploitation? A State Regulator's View of Interstate Credit Card Transactions,* 42 Bus.Law. 929 (1987); Coreen S. Arnold & Ralph J. Rohner, *The "Most Favored Lender" Doctrine for Federally Insured Financial Institutions—What Are Its Boundaries?,* 31 Cath.U.L.Rev. 1 (1981). Plaintiffs, and these commentators, point out that cases decided under the most favored lender doctrine, such as *Fisher,* involve national banks *borrowing* state law terms from state lenders that are not banks, while *Marquette* involved national banks *exporting* state law terms to apply to customers in other states. Thus, they argue that cases applying an expansive definition of interest in a borrowing context are inapplicable in an exporting context.

There are three problems with plaintiffs' argument. First, the question of whether national banks may export terms other than periodic interest charges goes to the merits of the case; deciding that question on a motion to remand is inappropriate. Thus, plaintiffs' policy arguments against allowing exported terms to preempt a state's consumer protection laws are, at this stage of the litigation, beside the point. Second, *Fisher* itself involved exporting as well as borrowing; the *Fisher* court allowed the national bank both to borrow Nebraska laws governing loans made by small lenders and to export those laws to its credit-card customers in Iowa.

Finally, plaintiffs' proposed distinction between the definition of interest for the purposes of borrowing and the definition of interest for the purposes of exporting is without statutory support. To determine that section 85 allowed the national bank to borrow Nebraska laws allowing small lenders to charge flat fees, the *Fisher* court necessarily had to determine that the flat fee was "interest at the rate allowed by the laws of the State ... where the bank [was] located." 12 U.S.C. § 85. To determine that the flat fees involved in this action do not implicate sections 85 and 86, the Court would necessarily have to determine that the fees are *not* "interest at the rate allowed by the laws of the State ... where the bank is located." 12 U.S.C. § 85. In other words, plaintiffs' theory is that the same statutory language means one thing when a national bank borrows a rate, but another thing when the national bank exports the rate. That theory is, in the Court's view, untenable.

In *Fisher,* the Eighth Circuit held that a flat fee was interest for the purposes of section 85 and 86. In *M. Nahas,* the Eighth Circuit held that a claim for usurious interest paid is necessarily a federal claim and is removable even if couched in state law terms. These decisions control this case and compel the conclusion that the actions were properly removed. Therefore, the Court will deny plaintiffs' motions to remand.

---

6. Indeed, one significant factor in the *Greenwood Trust* court's decision was the fact that Congress had offered states the option of opting out of the requirements of section 1831d by reforming their usury laws. *See* 12 U.S.C. § 1730g note. Massachusetts chose to override section 1831d by passing legislation raising its own interest rate ceilings. The *Greenwood Trust* court found section 1831d's escape clause to be inconsistent with the theory that Congress intended to displace state regulation of credit card transactions. *Greenwood Trust,* 776 F.Supp. at 34–35. The National Banking Act has no such opt-out provision.

Accordingly, based on the foregoing, and upon all the files, records and proceedings herein,

IT IS ORDERED that plaintiffs' motions to remand are denied.