**Norma K. HILL and all others similarly situated, Plaintiffs,**

v.

**CHEMICAL BANK, f/k/a Chemical Bank Delaware, Defendant.**

**Walter FASULO, Karen Fasulo, and all others similarly situated, Plaintiffs,**

v.

**CHEMICAL BANK, f/k/a Chemical Bank Delaware, Defendant.**

**Nos. 3–92 CIV 255, 3–92 CIV 387.**

United States District Court,
D. Minnesota,
Third Division.

Aug. 4, 1992.

---

Reinhardt and Anderson by Mark Reinhardt, St. Paul, Minn., appeared, for plaintiff Hill.

Chestnut and Brooks by Stuart C. Bear, and Michael Donovan, Minneapolis, Minn., appeared, for plaintiffs Fasulo.

Morrison & Foerster by Jack C. Auspitz, New York City, and Doherty, Rumble & Butler by James R. Crassweller, St. Paul, Minn., appeared, for defendant.

## ORDER

ALSOP, District Judge.

The above-entitled matters came on for hearing before this court on July 21, 1992, upon the motions of plaintiffs to remand these matters to state court. Although these matters are not formally consolidated, the remand motions have been heard and considered together because the issues in both motions are identical. For the reasons set forth below, plaintiffs' motions to remand will be denied.

## I. FACTUAL BACKGROUND.

Plaintiffs in these matters are Minnesota residents who hold credit cards issued by defendant Chemical Bank, f/k/a Chemical Bank Delaware. Chemical Bank is chartered by the State of New York, has its principal place of business in New York, and is insured by the Federal Deposit Insurance Corporation ("FDIC"). Plaintiffs initiated these actions in state court, alleging that defendant's practice of charging

late fees and "overlimit" fees violates Minnesota law.

Specifically, plaintiffs allege that defendant's charging Minnesota credit cardholders late fees and overlimit fees,[1] in addition to a periodic interest charge and an annual fee, violates Minn.Stat. § 48.185, subd. 4. Based on this alleged violation, plaintiffs assert causes of action under Minnesota law for deceptive trade practices and unjust enrichment. The Hill complaint also asserts a cause of action under Minn.Stat. § 48.185. Plaintiffs ask the court to certify their actions as class actions, to issue declaratory and injunctive relief prohibiting defendant's practice of charging late and overlimit fees, and to award damages, attorney's fees and costs.

Chemical Bank timely removed both actions pursuant to 28 U.S.C. § 1441(b), alleging both federal question and diversity jurisdiction.[2] Chemical Bank alleges that federal question jurisdiction exists because plaintiffs' actions "necessarily implicate[ ] and arise[ ] under Section 521 of the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA"), 12 U.S.C. § 1831d, because Section 521 of that Act governs the legality of interest charges, including late charges, a federally insured state-chartered bank may make in connection with interstate loans ... and provides the remedy for persons seeking to challenge such charges." Defendants's Notice of Removal, *Hill v. Chemical Bank*, at 2.

## II. DISCUSSION.

▆▆▆ Removal of a state court action based on federal question jurisdiction is proper only if the action asserts a claim "arising under the Constitution, laws, or treaties of the United States" 28 U.S.C. §§ 1331, 1441. Ordinarily, a case "arises under" federal law only when a federal question appears on the face of the plain-

tiff's "well-pleaded complaint." *Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Under the well-pleaded complaint rule, a case cannot be removed based on a federal defense to a state law claim, including the defense of preemption, even if the defense is anticipated in the complaint and both parties concede that it is the only question at issue. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 12, 103 S.Ct. 2841, 2847, 77 L.Ed.2d 420 (1983).

A narrow exception to the well-pleaded complaint rule exists, however, where Congress has "so completely preempt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). The Supreme Court has found complete preemption in only three areas: (1) in relation to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185; (2) relating to the Employment Retirement Income Security Act, 29 U.S.C. §§ 1001–1461; and (3) concerning Indian Rights. *See Queen v. City of Detroit*, 874 F.2d 332, 342 (6th Cir.1989). The Eighth Circuit has found complete preemption in other areas. *See Deford v. Soo Line R.R.*, 867 F.2d 1080 (8th Cir.), *cert. denied*, 492 U.S. 927, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989) (finding complete preemption under the Railway Labor Act, 45 U.S.C. §§ 151–188). Significantly for the instant cases, the Eighth Circuit recently held in *M. Nahas & Co. v. First Nat. Bank of Hot Springs*, 930 F.2d 608 (8th Cir.1991), that Section 86 of the National Bank Act com-

---

**1.** As the labels indicate, a "late fee" is a flat charge assessed against a credit cardholder who fails to timely pay on the credit cardholder's balance, and an "overlimit fee" is a flat charge assessed against cardholders who exceed their credit limit. The Fasulo complaint challenges only the imposition of late fees, while the Hill complaint challenges both late fees and overlimit fees.

**2.** Because the court concludes that removal is proper on federal question grounds, it need not reach defendant's assertion that diversity jurisdiction also exists.

pletely preempts the field of usury claims against national banks.

Determining whether the complete preemption doctrine permits removal of the instant cases requires a two-step analysis. First, the court must determine whether § 521 of DIDA completely preempts the field of usury claims against FDIC-insured state banks. Second, the court must determine whether plaintiffs' claims are in fact usury claims, that is claims challenging the "rate of interest" charged by an FDIC-insured state bank within the meaning of § 521.

A. *Complete Preemption Under Section 521.*

▮ Section 521(a) of DIDA establishes the maximum interest rate for loans made by state-chartered, FDIC-insured banks. Under § 521(a), these banks may charge interest at the "rate allowed" in the state where the bank is located or at 1% over the federal reserve discount rate for 90–day commercial paper, whichever is greater. The statute expressly preempts any conflicting state law.[3] Section 521(b) of DIDA creates a federal remedy in favor of borrowers who are charged rates in excess of the limit established in § 521(a). Borrow-

ers may recover twice the amount of interest paid on a usurious loan, and the entire interest due on the loan will be deemed forfeited.[4]

Prior to the enactment of DIDA in 1980, regulation of interest rates charged by state banks was solely a matter of state law. In contrast, federal law has governed the interest rates chargeable by national banks since the enactment of the National Bank Act in 1864. Under federal law, national banks are afforded "most favored lender" status, meaning a national bank may charge the highest rates allowed to any competing institution in the state in which it is located. In addition, national banks may "export" a favorable interest rate from its home state in transactions with borrowers from other states. *Marquette National Bank v. First Omaha Service Corp.*, 439 U.S. 299, 99 S.Ct. 540, 58 L.Ed.2d 534 (1978). In 1979 and 1980, a period of extremely high interest rates, national banks enjoyed a competitive advantage over state banks which were bound by lower state usury ceilings. As the language and legislative history of § 521 make clear, Congress enacted § 521 to create parity between national and state banks with respect to usury limitations.[5]

---

**3.** Section 521(a), 12 U.S.C. § 1831d(a), reads in relevant part:

> In order to prevent discrimination against State-chartered insured depository institutions ... with respect to interest rates, if the applicable rate prescribed in this subsection exceeds the rate such State bank ... would be permitted to charge in the absence of this subsection, such State bank ... may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made ... interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve Bank in the Federal Reserve district where such State ... bank is located or at the rate allowed by the laws of the State ... where the bank is located, whichever may be greater.

**4.** Section 521(b), 12 U.S.C. § 1831d(b), reads in relevant part:

> If the rate prescribed in subsection (a) exceeds the rate such State bank ... would be permitted to charge in the absence of this section, and such State fixed rate is thereby

preempted by the rate described in subsection (a), the taking, receiving, reserving, or charging a greater rate of interest than is allowed by subsection (a), when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. If such greater rate of interest has been paid, the person who paid it may recover in a civil action commenced in a court of appropriate jurisdiction not later than two years after the date of such payment, an amount equal to twice the amount of the interest paid from such State bank taking, receiving, reserving, or charging such interest.

**5.** The introductory sentence of § 521 states that its purpose is to "prevent discrimination" against state banks. *See supra* at note 3. Statements of Senators Proxmire and Bumpers in support of the bill which ultimately became § 521 verify that Congress intended that state and national banks receive equal treatment with respect to interest rates. *See* 126 Cong.Rec. 4217 (daily ed. Feb. 28, 1980) (statement of Sen. Bumpers) ("competitive equity dictates that financial institutions offering similar products should be subject to similar rules"); 126 Cong.

■ The key language of § 521 is substantially identical to the language of §§ 85 and 86 of the National Bank Act, the federal usury provisions governing national banks. Generally, similar language should be interpreted in the same way, unless context requires a different interpretation. Further, Congress is presumed to be aware of judicial interpretations of statutory language when it intentionally incorporates the language of one statute into another statute. *See Holmes v. Security Investor Protection Corp.,* —— U.S. ——, ——— ——, 112 S.Ct. 1311, 1317–18, 117 L.Ed.2d 532 (1992); *Lorillard v. Pons,* 434 U.S. 575, 580–81, 98 S.Ct. 866, 869–70, 55 L.Ed.2d 40 (1978). Given the similarity of language and the clearly expressed intent of Congress to create parity between state and national banks, § 521 should be interpreted consistently with sections 85 and 86. Other courts concur in this conclusion. *See Gavey Properties/762 v. First Financial Savings & Loan,* 845 F.2d 519, 521 (5th Cir.1988) (interpreting DIDA § 522, the analog to § 521 for savings and loans, to "harmonize fully" with § 85 of the National Bank Act); *Vanderweyst v. First State Bank of Benson,* 425 N.W.2d 803 (Minn. 1988) (holding that DIDA § 521 grants federally insured, state chartered banks the most favored lender status enjoyed by national banks). The FDIC has similarly interpreted DIDA § 521 to provide state banks with the same interest rate authority as national banks. *See* Exhibit 2 to Affidavit of James R. Crassweller, letter dated July 8, 1992 by Douglas H. Jones, Deputy General Counsel, FDIC ("Jones Opinion").

In *M. Nahas, supra,* the Eighth Circuit addressed the question whether a state law usury action against a national bank is removable under the complete preemption doctrine. The plaintiff in *M. Nahas* asserted a claim under Arkansas Law against a national bank for charging interest rates exceeding the limits of Arkansas usury law. Finding it well-settled that Section 86 creates an exclusive federal remedy for usury by national banks, the Eighth Circuit stated that removal under the complete preemption doctrine is "most appropriate where Congress has created an exclusive federal remedy that displaces any overlapping or inconsistent state remedies." 930 F.2d at 612. "Thus, whether or not plaintiff artfully attempted to couch its complaint wholly in state law terms, it was necessarily federal in nature and properly removable." *Id.*

The use of language in § 521(b) nearly identical to that of § 86 of the National Bank Act compels the conclusion that, like § 86, § 521(b) creates an exclusive federal remedy. That § 86 provided an exclusive federal remedy was well-settled long before DIDA was enacted. *See, e.g., First Nat'l Bank v. Nowlin,* 509 F.2d 872, 881 (8th Cir.1975) (citing Supreme Court cases from the early 1900's in holding that § 86 creates an exclusive federal remedy). Moreover, subjecting state banks to the many and various state law remedies while national banks are subject only to the federal remedy would disrupt the "level playing field" Congress envisioned in enacting § 521. Accordingly, § 521(b) must be interpreted as an exclusive federal remedy for usury claims against federally insured, state-chartered banks.

Section 521 extends to state banks the same substantive usury restrictions and the same exclusive federal remedy that the Eighth Circuit addressed in *M. Nahas.* Under the reasoning of *M. Nahas,* it follows that § 521 of DIDA completely preempts the field of usury claims against federally-insured state banks.

## B. *Late and Overlimit Fees as Interest.*

■ Plaintiffs steadfastly argue that their claims in these cases fall outside the scope of § 521, and therefore outside the scope of any complete preemption, because the late and overlimit fees plaintiffs challenge are not "interest" within the meaning of § 521. Defendant argues that late and overlimit fees are components of interest under § 521 and, therefore, even though

Rec.S. 6894 (March 27, 1980) (statement of Sen. Proxmire) ("[Section 521] seeks to create a level playing field so that all institutions may compete on the same terms").

plaintiffs characterize their claims otherwise, plaintiffs in substance seek a remedy for usurious interest.

This court recently addressed precisely this issue in the context of the National Bank Act in *Nelson, et al. v. Citibank, N.A.*, 794 F.Supp. 312 and *Tikkanen v. Citibank, N.A.*, 794 F.Supp. 312 (Memorandum and Order of May 28, 1992 applicable to both cases) (MacLaughlin, C.J.). *Nelson* is a putative class action by Minnesota credit cardholders asserting the same claims against national banks as those Hill and Fasulo assert against Chemical Bank.[6] Finding a "wealth of authority" in the form of a long line of case law as well as agency determinations interpreting "interest" under § 85 of the National Bank Act to include fees other than periodic interest charges, the court held that, for purposes of removal, late fees and overlimit fees are "interest" under § 85. *Nelson*, 794 F.Supp. at 318–320. *Nelson* places particular reliance on *Fisher v. First National Bank*, 548 F.2d 255 (8th Cir.1977), in which the court considered a flat fee for cash advances on a credit card a component of interest which can be "borrowed" by national banks under the most favored lender doctrine.

The same result must hold true under § 521. As indicated earlier, interpreting § 521 as consistent with § 85 is appropriate in light of the identity of language and Congress' intent to treat state and national banks equally. Moreover, the FDIC has interpreted § 521 to include late fees within its scope. The FDIC states in a recent opinion letter:

> [I]t is our position that Section 521 authorizes state-chartered FDIC-insured banks to charge interest at the rate allowed to the "most favored lender" by the laws of the state in which the bank is chartered, even if that rate exceeds the maximum permitted by an out-of-state borrower's state of residence. That authorization necessarily includes the right to charge

late fees and other charges permitted by the bank's home state which are either a component of interest or material to the determination of the interest rate.

Jones Opinion, *supra*, at p. 2.

The FDIC is the agency charged with administering and enforcing the Federal Deposit Insurance Act, of which § 521 is a part. As such, its interpretation is entitled to deference. *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Independent Bankers Ass'n of America v. Clarke*, 917 F.2d 1126 (8th Cir.1990). The court finds the FDIC's interpretation reasonable. Based on *Nelson*, *Fisher*, and the FDIC's position, the court concludes that, for purposes of removal, plaintiff's claims challenging late and overlimit fees are challenges to "interest" under § 521 and therefore properly removable.

In advocating the contrary view, plaintiffs rely primarily on *Greenwood Trust Co. v. Commonwealth of Massachusetts*, 776 F.Supp. 21 (D.Mass.1991), *appeal heard* June 3, 1992. *Greenwood Trust* involved a federally insured Delaware bank which imposed late charges, permissible under Delaware law, to credit cardholders in Massachusetts. Massachusetts law prohibits late charges. The district court in *Greenwood Trust* held that the term "interest" in § 521 referred only to numerical periodic interest rates and, therefore, § 521 did not preempt the Massachusetts law prohibiting late charges on credit cards.

The court respectfully disagrees with the analysis in *Greenwood Trust*. In this court's view, *Greenwood Trust* places insufficient weight on judicial and agency interpretations of the term "interest" under § 85 of the National Bank Act which, as *Nelson* indicates, take an expansive view of the term. Congress used identical language in § 521, and declined to provide any specific definition of the term "interest." In such circumstances, it seems high-

---

6. The original complaint in *Nelson* contained an additional claim under the Minnesota usury statute, *Minn.Stat.* § 48.196. Plaintiffs dropped this claim from their amended complaint. Although the *Nelson* court held the removal issue was to be determined based on the original complaint, it went on to hold that the case was removable based on the amended complaint as well. *Nelson*, 794 F.Supp. at 316, n. 4.

ly unlikely Congress intended the term "interest" to have a more narrow meaning under § 521 than under § 85.

In reaching its conclusion, the *Greenwood Trust* court relies on the Senate Report relating to § 501 of DIDA which limits the preemptive scope of § 501 to periodic interest rates, expressly excluding late charges. *Greenwood Trust,* 776 F.Supp. at 29. This reliance is misplaced. Section 501 applies only to first-lien residential mortgage loans made by various types of lenders, while § 521 applies to any loan made by federally insured state-chartered banks. The two sections originated in different bills, were codified in different Acts, and served different purposes. Accordingly, the legislative history of § 501 is not necessarily an indication of Congress' intent in enacting § 521. In addition, the comment on § 501 can cut both ways. The absence of a comparable comment limiting the preemptive scope of § 521 arguably indicates that Congress intended that, absent limiting language, the term "interest" be interpreted to include more than the numerical periodic interest rate, as is the case under § 85 of the National Bank Act.

The court also disagrees with the *Greenwood Trust* court's assessment of the DIDA provisions allowing states to opt out of the preemptive effect of the DIDA usury provisions. *Greenwood Trust* argues that because Congress sought to accommodate state usury restrictions in this way, Congress must have intended only a narrow incursion into state usury regulation. 776 F.Supp. at 30, 34–35. The conclusion does not follow from the premise. It is equally possible that Congress, recognizing the broad preemptive scope of DIDA, adopted the opt-out provision as its sole consolation to the states. The best evidence of the preemptive scope of § 521 is the language and the history of the section itself which, for the reasons stated above, indicate "interest" includes late fees, overlimit fees, and similar charges.

## III. CONCLUSION.

Upon the foregoing, and all the files, records, and proceedings herein,

IT IS ORDERED That plaintiffs' motions to remand the instant actions are DENIED.