Samuel J. STOORMAN, on behalf of himself and all others similarly situated, Plaintiff–Appellant,

v.

GREENWOOD TRUST COMPANY, Defendant–Appellee.

No. 93CA0224.

Colorado Court of Appeals, Div. IV.

April 7, 1994.

Rehearing Denied May 26, 1994.

Certiorari Granted Jan. 30, 1995.

Bader & Villanueva, P.C., Gerald L. Bader, Jr., Jeffrey M. Villanueva, Renee B. Taylor, Denver, Chimicles, Burt, Jacobsen & McNew, Nicholas E. Chimicles, Michael D. Donovan, Haverford, PA, for plaintiff-appellant.

Holme Roberts & Owen, Jeffery A. Chase, Lawrence M. Zavadil, Denver, Wolf, Block, Schorr & Solis–Cohen, Burt M. Rublin, Alan S. Kaplinsky, Jeffrey S. Saltz, Philadelphia, PA, for defendant-appellee.

Opinion by Judge MARQUEZ.

Plaintiff, Samuel J. Stoorman, on behalf of himself and all others similarly situated, appeals the summary judgment entered in favor of defendant, Greenwood Trust Company. The trial court determined that plaintiff's claims seeking a refund of all delinquency or late payment fees charged were preempted by § 521 of the Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDA), 12 U.S.C. § 1831d (1988). We affirm.

Plaintiff alleges that he is a resident of Colorado and the holder of a "Discover" credit card. Defendant is a bank located in Delaware and whose deposits are insured by the Federal Deposit Insurance Corporation (FDIC). Defendant offers the Discover Card to Colorado residents.

The terms and conditions applicable to use of the Discover Card are spelled out in a cardmember agreement, which stipulates that the holder must make a minimum monthly payment. Failure to make this payment in a timely fashion constitutes a default. If the default is not cured within twenty days, a ten-dollar late charge is automatically assessed. Defendant separately identifies the late charge from other charges in its monthly billing statement.

In an amended class action complaint, plaintiff alleges that the late charges, which defendant imposed pursuant to its credit card contract with plaintiff, violate the Colorado Consumer Credit Code, §§ 5–3–203 and

5–5–202, C.R.S. (1992 Repl.Vol. 2), and other statutes. Plaintiff also alleges that defendant converted the late charges from plaintiff on a false and illegal claim of right and that the late charges constitute an illegal penalty, and thus, a breach of contract.

## I.

On appeal, the issue is whether the trial court correctly determined that § 521 of DIDA preempts Colorado law. Specifically, the issue is whether defendant, a federally-insured, state-chartered bank located in Delaware, may assess its Discover credit card holders located in Colorado a late charge on delinquent accounts, a charge permitted in Delaware, but ostensibly prohibited in Colorado. We conclude that Colorado law is preempted.

■ The preemption doctrine is derived from the supremacy clause U.S. Const. art. VI, cl. 2. There are several ways Congress can preempt state law. Congress can expressly declare that states are precluded from legislating in an area of law. When Congress does not expressly preclude state legislation, state legislation may be preempted as a result of implied preemption or conflict preemption. *Rosa v. Warner Electrical Contracting,* 870 P.2d 1210 (Colo.1994).

■ In any preemption analysis, the question whether federal law preempts a state statute is one of congressional intent. *Banner Advertising, Inc. v. People,* 868 P.2d 1077 (Colo.1994).

In order to understand the preemption theory in this case, it is necessary to start with the National Bank Act of 1864, ch. 106, 13 Stat. 99 (1864) (Bank Act).

Under the Bank Act, a national bank may charge interest on any loan at the rate allowed by the laws of the state in which the bank is located. 12 U.S.C. § 85 (1988). In addition, a national bank may "export" a favorable interest rate from the state in which it is located in transactions with borrowers from other states. *Marquette National Bank v. First Omaha Service Corp.,* 439 U.S. 299, 99 S.Ct. 540, 58 L.Ed.2d 534 (1978); *Hill v. Chemical Bank,* 799 F.Supp. 948 (D.Minn.1992).

As discussed in *Greenwood Trust Co. v. Commonwealth of Massachusetts,* 776 F.Supp. 21 (D.Mass.1991), *rev'd,* 971 F.2d 818 (1st Cir.1992), the Bank Act favored the national banks and protected them from discriminatory state laws. For a time, the interest rates of state and national banks were comparable. However, in 1979, when the Federal Reserve rate rose sharply, national banks gained a competitive advantage in states with lower usury law interest ceilings. Congress responded to the unprecedented crisis of simultaneous recession and inflation by enacting DIDA. "As the language and legislative history of § 521 make clear, Congress enacted § 521 to create parity between national and state banks with respect to usury limitations." *Hill v. Chemical Bank, supra,* 799 F.Supp. at 951.

■ Section 521 of DIDA allowed state banks, like the national banks, to charge interest at the federal rate and thereby preempted state usury laws. 12 U.S.C. § 1831d(a) (1988 & Supp.1990). The express preemption clause contained in § 521 provides in pertinent part:

In order to prevent discrimination against State-chartered insured depository institutions, including insured savings banks ... with respect to interest rates ... such State bank[s] ... may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any note, bill of exchange, or other evidence of debt, interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such State bank ... is located or at the rate allowed by the laws of the State, territory, or district where the bank is located, whichever may be greater.

12 U.S.C. § 1831d(a).

■ At the same time, Congress also recognized the continued importance of state consumer protection laws. Section 525 of DIDA gave states the option to enact legislation to override the federal preemption provisions. 12 U.S.C. § 1730g (1988) (note).

## A.

Plaintiff first contends that because Congress intended the word "interest" in § 521 to be interpreted under the federal common law and that because "interest," as defined by federal case law, does not include late charges, Colorado law is not preempted with respect to late charges. We disagree.

■ To address this issue, we rely on the First Circuit's well reasoned decision in *Greenwood Trust Co. v. Commonwealth of Massachusetts,* 971 F.2d 818 (1st Cir.1992), *rev'g* 776 F.Supp. 21 (D.Mass.1991). There, the First Circuit stated:

In the first place, we do not believe that the plain meaning of "interest" necessarily restricts the definition of the word to numerical percentage rates. Reference works typically define interest as "a charge for borrowed money[,] *generally* a percentage of the amount borrowed." *Websters Ninth New Collegiate Dictionary* 630 (1989) (emphasis supplied); *see also Black's Law Dictionary* 812 (6th ed. 1990). Such definitions do not limit interest to numerical percentage rates, for they simply note that interest is often, but not always, expressed as a percentage. . . .

Judicial opinions also tend to shy away from limiting the word "interest" to numerical percentage rates. Specifically, federal case law has long suggested that, in ordinary usage, interest may encompass late fees and kindred charges. *See, e.g., Shoemaker v. United States,* 147 U.S. 282, 321, 13 S.Ct. 361, 394, 37 L.Ed. 170 (1893) ("Interest accrues either by agreement of the debtor to allow it for the use of money, or, in the nature of damages, by reason of the failure of the debtor to pay the principal when due."); *Brown v. Hiatts,* 82 U.S. (15 Wall.) 177, 185, 21 L.Ed. 128 (1873) ("[i]nterest is the compensation allowed by law, or fixed by the parties, for the use or forbearance of money, or as damages for its detention").

. . . Default necessarily increases the creditor's cost of processing a loan. Therefore, a late fee is sufficiently related to the "use or forbearance of money, or . . . damages for its detention" that it can appropriately be classified as "interest."

*Greenwood Trust Co. v. Commonwealth of Massachusetts, supra,* 971 F.2d at 824–25.

Perhaps most persuasive is the rationale of the First Circuit that Congress incorporated into § 521 of DIDA language used in § 85 of the Bank Act. Section 85 of the Bank Act provides in pertinent part:

[A national bank] may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or other evidence of debt, interest at the rate allowed by the laws of the State, Territory, or District where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater. . . .

12 U.S.C. § 85 (1988). "The historical record clearly requires a Court to read the parallel provisions of DIDA [§ 521] and the Bank Act [§ 85] *in pari materia." Greenwood Trust Co. v. Commonwealth of Massachusetts, supra,* 971 F.2d at 827; *accord Hill v. Chemical Bank, supra.* The First Circuit then noted that under § 85 of the Bank Act:

Several courts . . . have had little trouble in construing the term "interest" to encompass a variety of lender-imposed fees and financial requirements which are independent of a numerical percentage rate. *See, e.g., American Timber & Trading Co. v. First Nat'l Bank,* 690 F.2d 781, 787–88 (9th Cir.1982) (compensating balance requirement); *Fisher v. First Nat'l Bank,* 548 F.2d 255, 258–61 (8th Cir.1977) (fee for cash advance); *Panos v. Smith,* 116 F.2d 445, 446–47 (6th Cir.1940) (taxes and recording fees); *Cronkleton v. Hall,* 66 F.2d 384, 387 (8th Cir.) (bonus or commission paid to lender), *cert. denied,* 290 U.S. 685, 54 S.Ct. 121, 78 L.Ed 590 (1933); *Nelson v. Citibank (South Dakota) N.A.,* 794 F.Supp. 312, 318 (D.Minn.1992) (late fees).

*Greenwood Trust v. Commonwealth of Massachusetts, supra,* 971 F.2d at 829; *see also, Hill v. Chemical Bank, supra.* Thus, we conclude, as the First Circuit did in *Greenwood Trust,* that "interest" under § 521 in-

cludes late fees. We further conclude that plaintiff's other contentions as to the meaning of "interest" in § 521 are without merit.

## B.

■ Plaintiff next alleges that even if § 521 preempts Colorado statutory law, it does not preempt the common law. We disagree.

The pertinent part of § 521 reads:

[S]uch State bank[s] ... may, notwithstanding any *State constitution or statute* which is hereby preempted for the purposes of this section, take, receive, reserve, and charge ...

12 U.S.C. § 1831d(a) (1988). (emphasis added).

This section does not explicitly state that it preempts the "common law." *Cf.* 12 U.S.C. § 2205 (preempting "any State Constitution or statute or other laws"). Conversely, it does not contain a savings clause for state common law claims. *See Gilbert v. Greenwood Trust Co.,* [Current] Fed. Banking L.Rep. (CCH) ¶ 89,412 (Court of Common Pleas, Phila. County, Pa. March 11, 1993) (*citing* 15 U.S.C. § 4406(c) ("Nothing in this Act shall relieve any person from liability at common law...."), 49 U.S.C.App. § 1506 ("Nothing contained in this Act shall in any way abridge or alter the remedies now existing at common law...."), and two other statutes).

In *Gilbert* the court stated:

Plaintiffs have not brought to this Court's attention any Congressional legislative history that persuades this Court that Congress intended to preserve state common law claims which would affect the charges that banks could impose for loans. Finally, plaintiffs have not advanced to this court any cogent theory to explain why Congress intended to preempt state constitutions—the supreme law of the states—and state statutes—the most current and frequently employed state vehicle for regulating charges by lenders—and at the same time might have intended to preserve state common law claims.

*Gilbert v. Greenwood Trust Co., supra,* at 82,831.

■ Also, in *Hill v. Chemical Bank, supra,* the court determined that § 521(b) creates an exclusive federal remedy. An exclusive federal remedy is inconsistent with the idea that a plaintiff can seek relief under state common law theories. *First National Bank v. Nowlin,* 509 F.2d 872 (8th Cir.1975).

Thus, we conclude that because a contrary conclusion would conflict with the underlying purpose of § 521, plaintiff's common law challenges are also preempted. *See* Letter of Advice from Douglas H. Jones, Dep. Gen.Coun., FDIC (July 12, 1993).

## C.

■ Last, plaintiff argues that because Colorado opted out of DIDA, Colorado law is not preempted. We disagree.

In § 525 of DIDA, 12 U.S.C. § 1730g (1988) (note), Congress provided that any state could opt out of § 521's preemptive grasp. In 1981, Colorado enacted § 5–13–104, C.R.S. (1992 Repl.Vol. 2), which provides:

Other loans. In accordance with section 525 of Public Law 96–221, it is declared that the state of Colorado does not want the amendments to the "Federal Deposit Insurance Act", the "National Housing Act", and the "Federal Credit Union Act" made by sections 521 to 523 of Public Law 96–221 prescribing interest rates and preempting state interest rates to apply in this state. The rates established in article 1 to 9 of this title shall control consumer credit transactions in the state of Colorado.

Effective August 9, 1989, Congress repealed the opt-out provision of DIDA. *See* Financial Institutions Reform, Recovery and Enforcement Act of 1989, § 407 Pub.L. No. 101–73, 103 Stat. 183, 363 (1989). Here, plaintiff did not incur any late charges on his Discover Card until after that date.

However, even if Colorado's opt-out remains effective, we conclude that § 525 prevents an opt-out in this case.

Section 525 provided that a state could opt out of §§ 521 to 523 only "with respect to

loans made in such state." 12 U.S.C. 1730g (1988) (note).

In construing this language, the FDIC stated in an advisory opinion that:

> [The State's right under section 525 to] countermand [federal preemption] belongs to the State where the loan is made.... The fact that a State has countermanded under section 525 should not affect the usury preemption of section 521 for a bank not located in that State, so long as the loan is not made in the State that has countermanded.

Dep.Gen.Coun.Mem., FDIC–88–45 (June 29, 1988), Fed. Banking L.Rep. (CCH) § 81.110; *but see Greenwood Trust Co. v. Commonwealth of Massachusetts, supra,* 776 F.Supp. 21, *rev'd on other grounds,* 971 F.2d 818 (on appeal, the First Circuit did not have to resolve this issue, because it concluded that Massachusetts opted back into DIDA before the litigation began).

We agree with the FDIC's opinion and conclude that Colorado could opt out only with respect to loans made in Colorado.

Colorado's version of the Uniform Consumer Credit Code provides: "A loan or modification of a loan agreement is made in this state if a writing signed by the debtor and evidencing the debt is received by the lender in this state." Section 5–1–201(1)(c), C.R.S. (1992 Repl.Vol. 2); *see also* Flynn, *Colorado Usury: The Sequel—Part I,* 23 Colo.Law. 565, 566 (March 1994); *cf.* § 5–1–201(2), C.R.S. (1992 Repl.Vol. 2) (regarding revolving charge accounts).

Because in the present case the lender is located in Delaware, we conclude that even if unaffected by the repeal of the opt-out provision, the opt-out is ineffective with respect to the loans made in this case.

The judgment is affirmed.

PLANK and ROTHENBERG, JJ., concur.