Brian K. COPELAND, Plaintiff,

v.

MBNA AMERICA, N.A., Defendant.

No. 92–C–1388.

United States District Court,
D. Colorado.

May 7, 1993.

D. Monte Pascoe, John Warden, New York City, for plaintiff.

Gerald Bader, Nicholas Chimicles, Haverford, PA, for defendant.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiff Brian K. Copeland, a resident of Colorado, brought this class action in the state district court for the City and County of Denver seeking injunctive relief and damages under Colorado statutory and common law.[1] Defendant MBNA America (MBNA) is a Delaware corporation. Pursuant to 28 U.S.C. § 1441, MBNA removed the case to this court. Copeland has filed a motion to remand to state court. MBNA has responded by opposing that motion.

The parties have fully briefed the issues and oral argument would not materially assist the decision process. Jurisdiction is alleged under 28 U.S.C. §§ 1331 and 1332.

### I. FACTUAL AND PROCEDURAL BACKGROUND.

MBNA solicits Colorado residents to accept the credit cards it issues. Its standard agreement imposes a late fee of $15.00 if the cardholder fails to pay the monthly payment on time. Copeland, alleging that such fees are prohibited by Colorado law, brought suit against MBNA on behalf of all residents of Colorado who are or have been holders of MBNA Mastercards or Visa cards and who have been, or may be, charged late fees.

MBNA removed asserting that federal question jurisdiction exists under the "well-pleaded complaint" rule or an exception to that rule known as "complete preemption." MBNA also asserts that diversity jurisdiction exists.

### II. ANALYSIS.

#### A. Well–Pleaded Complaint Rule.

A civil action brought in state court alleging claims that lie within the original

---

1. Plaintiff's first and second claims seek damages and injunctive relief under Colorado's Uniform Consumer Credit Code—Remedies and Penalties. Colo.Rev.Stat. §§ 5-1-101 to 5-13-105 (1992 Repl.Vol.) Plaintiff's third claim is for unjust enrichment. Plaintiff's fourth claim is brought under the Colorado Consumer Protection Act. Colo.Rev.Stat. §§ 6-1-101 to 6-1-205 (1992 Repl.Vol.)

jurisdiction of federal district courts may be removed to the appropriate court under 28 U.S.C. § 1441. Federal district courts have original jurisdiction over actions "arising under" the laws of the United States. 28 U.S.C. § 1331. Whether a case arises under the laws of the United States is determined from the plaintiff's complaint, unaided by statements alleged in anticipation of defenses that the defendant may raise. *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10, 103 S.Ct. 2841, 2847, 77 L.Ed.2d 420 (1983). The well-pleaded complaint rule is satisfied when the complaint reveals that "a right or immunity created by the Constitution or laws of the United States [is] an element, and an essential one, of the plaintiff's cause of action." *Gully v. First Nat'l Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936) (emphasis added).

■ Here not one of Copeland's four claims for relief, all of which are founded upon state law, contains, as an essential element, a *right or immunity created by federal law*. Instead, MBNA argues:

> "Since the complaint on its face (Complaint ¶¶ 29 & 30) indicates that adjudication of this action requires the construction and application of the National Bank Act, 12 U.S.C. §§ 85 and 86, this action is removable under the well-pleaded complaint rule." (Notice of Removal, ¶ 2a.)

While construction and application of the Federal Bank Act (the Act) may be necessary to adjudicate Copeland's claims, the Act will arise only as a defense. The presence of a defense based on federal law will not support jurisdiction, "even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987).

As a result, the well pleaded complaint rule cannot provide a legitimate basis for removal of this action.[2]

### B. Complete Preemption.

Other courts have found federal jurisdiction over state law challenges to out of state banks charging late fees based upon complete preemption. *See Greenwood Trust Co. v. Massachusetts*, 971 F.2d 818 (1st Cir. 1992); *Hill v. Chemical Bank*, 799 F.Supp. 948 (D.Minn.1992); *Nelson v. Citibank*, 794 F.Supp. 312 (D.Minn.1992). This court, however, respectfully disagrees.

■ Complete preemption is an independent corollary to the well-pleaded complaint rule. *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430. Complete preemption arises when "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule'". *Id.* (quoting *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)).

Complete preemption is not to be applied freely. The Supreme Court has found complete preemption in only three settings. *See Metropolitan Life*, 481 U.S. 58, 107 S.Ct. 1542 (state contract and tort claims completely preempted by §§ 502(a)(1)(B) and 502(f) of the Employee Retirement Income Security Act of 1974); *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974) (state property law claim regarding Indian tribal lands completely preempted by federal law); *Avco Corp. v. Aero Lodge No. 735, International Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (§ 301 of the Labor Management Relations Act completely preempted state court injunction based on collective bargaining agreement).

Removal jurisdiction based on complete preemption only "exists when ... Congress has *clearly* manifested an intent to make causes of action ... *removable to federal court.*" *Metropolitan Life*, 481 U.S. at 67–68, 107 S.Ct. at 1548 (Brennan, J., concurring) (emphasis in original).[3] "[T]he prudent

---

**2.** This holding is consistent with this court's ruling in an earlier, factually similar, case. *Stoorman v. Greenwood Trust Co.*, slip op. 92–C–493 (Sept. 22, 1992).

**3.** Justice Brennan is quoting the language of the majority opinion, but inserting the emphasis.

course for a federal court that does not find a *clear* congressional intent to create removal jurisdiction will be to remand the case to state court." *Id.* at 68, 107 S.Ct. at 1548 (emphasis in original).

In *Avco* and *Metropolitan Life,* complete preemption was based upon the broad sweep of jurisdictional provisions, both of which were similarly worded. No such argument is made here. Instead, MBNA argues that Copeland's claims are completely preempted by 12 U.S.C. §§ 85 and 86.

Section 85 states in pertinent part:

"Any association may charge on any loan . . . interest at the rate allowed by the laws of the State . . . where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be greater, and no more. . . . "

Section 86 states in pertinent part:

"The . . . charging of a rate of interest greater than is allowed by section 85 of this title, when knowingly done, shall be deemed a forfeiture of the entire interest. . . . "

Based upon these provisions, national banks may impose on citizens of other states the interest rates of the states in which the banks are located. *Marquette Nat'l Bank of Minneapolis v. First Omaha Service Corp.,* 439 U.S. 299, 99 S.Ct. 540, 58 L.Ed.2d 534 (1978). Nonetheless, this case only addresses *preemption* as a *defense* to state regulation of interest rates, not *complete preemption* as a basis for federal *jurisdiction* over claims relating to late fees.

Neither § 85 nor § 86 explicitly mentions late fees. Although the provisions use the terms "interest" and "rate of interest," neither of those terms is defined in the Act. Nonetheless, MBNA argues that the terms "interest" and "rate of interest" encompass late fees, thereby justifying federal jurisdiction under the doctrine of complete preemption.

■ The starting point in statutory interpretation is the language of the statute itself. *United States v. James,* 478 U.S. 597, 604, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986). Courts are to assume that the legislative purpose is expressed by the ordinary meaning of the words used. *Id.* Interest rate is defined as "[t]he percentage of an amount of money which is paid for its use for a specified time." *Black's Law Dictionary* 730 (5th ed. 1979) Interest is defined as "a charge for borrowed money[,] generally a percentage of the amount borrowed." *Webster's Ninth New Collegiate Dictionary* 630 (1989). Because late fees are not charged on a percentage basis, the ordinary meaning of the word interest does not include late fees.

■ In *Greenwood Trust Co. v. Massachusetts,* 971 F.2d 818, one of the cases relied upon by MBNA, the court noted that the word "generally" in *Webster's* qualified the definition so as not to exclude other possible meanings. 971 F.2d at 824. Therefore it concluded that the plain meaning rule did not control. *Id.* The plain meaning of a word, however, is not determined by reference to variations on its ordinary meaning, but by the ordinary meaning itself, *i.e.,* the way it is *generally* used.

Legislative history offers little assistance. The National Bank Act was passed in 1865. Congress did not give federal courts original jurisdiction over federal question cases until 1875. Section 1 Act of March 3, 1875, 18 Stat. 470. *See also,* Wright, *Law of Federal Courts* 90 (1983). Therefore, § 85 predates the well-pleaded complaint rule, complete preemption and, in fact, federal question jurisdiction.

Nonetheless, the provisions of § 85 were substantially adopted in § 521 of the Depositary Institutions Deregulation and Monetary Control Act of 1980, Pub.L. No. 96–221, 94 Stat. 132 (1980). The *Greenwood Trust Co. v. Massachusetts* court determined the legislative history of § 521 to be "at bottom, inclusive" as to whether the term interest includes late fees, thereby justifying complete preemption. 971 F.2d at 828. Instead, the court anchored its conclusion to court decisions giving a broad reading to the word

interest.[4]  *See also Nelson,* 794 F.Supp. at 312.

The dispositive question, however, is whether there is a clear manifestation of congressional intent to assign a preemptive force so extraordinary to §§ 85 and 86 as to convert state law challenges to late fees into claims arising under federal jurisdiction. *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430; *Metropolitan Life,* 481 U.S. at 66, 107 S.Ct. at 1547. This court concludes that a proposition that is not obvious from the plain meaning of a statute's language, nor from its legislative history, simply cannot be regarded as a clear manifestation of congressional intent. Therefore, complete preemption cannot provide the basis for federal jurisdiction over Copeland's claims.[5]

### C. *Diversity Jurisdiction.*

There is no question that the parties are of diverse citizenship. Therefore, jurisdiction under 28 U.S.C. § 1332 will exist if the amount in controversy requirement of $50,-000 is met.[6] MBNA maintains that the amount in controversy requirement is satisfied based upon Copeland's claim for injunctive relief, or in the alternative, based upon Copeland's claim for attorneys' fees.

When injunctive relief is sought, "the amount in controversy may be established by looking at the defendant's cost of complying with the injunction." *Justice v. Atchison, Topeka and Santa Fe Ry. Co.,* 927 F.2d 503, 505 (10th Cir.1991). Here MBNA maintains that it would cost approximately $70,000 to incorporate "into our existing system changes applicable exclusively to Colorado cardholders." (Affidavit of Douglas R. Den-

ton, ¶ 3.) The $70,000 figure, therefore, is based upon the total detriment to MBNA of complying with the proposed injunction.

■ Before a court may consider total detriment as the basis for satisfying the amount in controversy requirement in a class action case, it must first determine whether the class members' claims may be aggregated. *Lonnquist v. J.C. Penney Co.,* 421 F.2d 597, 599 (10th Cir.1970). To do otherwise would violate the accepted principle that the claims of the various plaintiffs in a class action may not be aggregated to satisfy the jurisdictional amount in controversy, except in certain narrowly defined circumstances. *Id., see Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).

> "Aggregation has been permitted only (1) in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant and (2) in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Snyder,* 394 U.S. at 335, 89 S.Ct. at 1056.[7]

Neither situation is present here. Therefore, aggregation would not be proper and MBNA's reliance on total detriment is misplaced. MBNA has not shown that, absent aggregation, the amount in controversy requirement has been met. Therefore, diversity jurisdiction may not be based on the cost of complying with the potential injunction.

■ Finally, MBNA argues that the amount in controversy requirement is satisfied because class members have a "common and undivided interest in the award of attorneys' fees," therefore those fees may be

---

4. *See, e.g. American Timber & Trading Co. v. First Nat'l Bank,* 690 F.2d 781, 787–88 (9th Cir.1982); *Fisher v. First Nat'l Bank,* 548 F.2d 255, 258–61 (8th Cir.1977); *Panos v. Smith,* 116 F.2d 445, 446–47 (6th Cir.1940); *Cronkleton v. Hall,* 66 F.2d 384, 387 (8th Cir.1933), *cert. denied,* 290 U.S. 685, 54 S.Ct. 121, 78 L.Ed. 590 (1933).

5. This holding resolves only the *jurisdictional* question of complete preemption and does not prevent MBNA from raising preemption as a defense to Copeland's claims. This court expresses no opinion on that issue.

6. Section 1332(a), 28 U.S.C., states in pertinent part:

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,-000, exclusive of interest and costs, and is between—
 (1) citizens of different states...."

7. In *Gas Service Company v. Coburn,* a companion case decided with *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), the Supreme Court reversed the holding of the Tenth Circuit that the aggregated claims of 18,000 class members challenging a franchise tax could be aggregated.

aggregated. This position is contrary to existing case law. *Goldberg v. CPC Int'l, Inc.,* 678 F.2d 1365 (9th Cir.), *cert. denied,* 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982); *Czechowski v. Tandy Corp.,* 731 F.Supp. 406 (N.D.Cal.1990).

The cases cited by MBNA deal with punitive damages, not attorneys' fees and therefore offer no support for its position. See, e.g. *Lailhengue v. Mobil Oil Corp.,* 775 F.Supp. 908, 914 (E.D.La.1991); *Martin v. Granite City Steel Corp.,* 596 F.Supp. 293, 297 (S.D.Ill.1984); *In re Northern Dist. of Cal. "Dalkon Shield" IUD Prod. Liab. Litig.,* 526 F.Supp. 887, 910–11 (N.D.Cal.1981), *vacated and remanded on other grounds,* 693 F.2d 847 (9th Cir.1982).

Therefore, the amount in controversy requirement may not be satisfied based upon the potential award of attorneys' fees.

Accordingly, IT IS ORDERED that the plaintiff's motion for remand of this case to the state district court is granted.