James **DONALD, on Behalf of Himself and All Others Similarly Situated, and on Behalf of the General Public, Plaintiff,**

v.

The **GOLDEN 1 CREDIT UNION and Does 1 Through 50, Defendants.**

Civ. No. S–93–1295–WBS/PAN.

United States District Court, E.D. California.

Dec. 15, 1993.

---

Alan M. Caplan, Bushnell Caplan and Fielding, San Francisco, CA, William S. Lerach, Milberg Weiss Bershad Specthrie and Lerach, San Diego, CA, for plaintiff.

Whitney F. Washburn, William R. Warne, Downey, Brand, Seymour & Rohwer, Sacramento, CA, for defendants.

### MEMORANDUM AND ORDER

SHUBB, District Judge.

This matter is before the court on plaintiff's motion remand to the Superior Court of California for the County of Sacramento pursuant to 28 U.S.C. § 1447(c). Plaintiff's complaint asserts five state law causes of action, each of which is premised on the alleged violation of Cal.Civ.Code § 1671. The issue before the court is whether plaintiff's state law claims are completely preempted by § 523 of the Depository Institutions Deregulation and Monetary Control Act of 1980, 12 U.S.C. § 1785(g).

· ·For the following reasons, the court holds that plaintiff's claims are not completely preempted, and the action is therefore remanded.

### BACKGROUND

The relevant facts are not disputed. Plaintiff James Donald is a California resident who held a Visa credit card issued by defendant The Golden 1 Credit Union, a California corporation with its principal place of business in Sacramento. Defendant is a federally-insured, state-chartered credit union.

On June 28, 1993, plaintiff filed a consumer class action against defendant in the Sacramento County Superior Court on behalf of himself, all other Golden 1 Visa card holders, and the general public. The complaint alleges that pursuant to the credit card agreement between plaintiff and defendant, defendant charges cardholders an illegal $5.00 penalty every time a cardholder's monthly payment is late. The complaint states five causes of action; the cornerstone of each is that the late fee clause in the credit card agreement is illegal under Cal.Civ.Code § 1671.[1] The complaint seeks declaratory, injunctive, punitive, and compensatory relief.[2]

Defendant timely removed the case to this court. It alleges that federal question jurisdiction exists because plaintiffs' action is completely preempted by federal law, specifically, § 523 of the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA"). Pub.L. No. 96–221, 94 Stat. 166 (codified as amended at 12 U.S.C. § 1785(g)). Defendant contends that plaintiff, by artful pleading, has attempted to avoid the federal law which necessarily governs.

### DISCUSSION

#### A.

■ Removal is proper when the federal district courts have original jurisdiction over a claim or right asserted in the state court action. U.S.C. § 1441(a), (b). If any one claim in a plaintiff's complaint comes within the original jurisdiction of the federal courts, removal is permitted. 28 U.S.C. § 1441(c); *Franchise Tax Bd. v. Construction Laborers*

---

1. Cal.Civ.Code § 1671 (West 1985) provides in relevant part:

 (c) The validity of a liquidated damages provision shall be determined under subdivision (d) and not under subdivision (b) where the liquidated damages are sought to be recovered from either:

 (1) A party to a contract for the retail purchase, or rental, by such party of personal property or services, primarily for the party's personal, family, or household purposes; ...

 (d) In the cases described in subdivision (c), a provision in a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.

2. Plaintiff's first cause of action seeks a declaration of the rights and obligations of the credit card holders and defendant in light of Cal.Civ. Code § 1671. Plaintiffs next allege that they are entitled to damages because the late fees violate Cal.Civ.Code § 1671(d). The remaining three causes of action allege that 1) plaintiffs are entitled to restitution and injunctive relief for defendant's violations of the California Unfair Trade Practices Act, Cal.Bus. & Prof.Code § 17200, *et seq.*; 2) plaintiffs are entitled to compensatory and punitive damages for statutory and common law fraud and deceit; and 3) plaintiffs are entitled to damages for common law negligent misrepresentation. The last three causes of action rest on the necessary premise that the late fees are illegal under Cal.Civ.Code § 1671.

*Vacation Trust,* 463 U.S. 1, 13, 103 S.Ct, 2841, 2848, 77 L.Ed.2d 420 (1983).

However, defendants seeking removal bear the burden of proving that the federal district court has subject matter jurisdiction. *Pullman Co. v. Jenkins,* 305 U.S. 534, 537, 59 S.Ct. 347, 349, 83 L.Ed. 334 (1939). The removal statute, 28 U.S.C. § 1441, is narrowly construed, and all doubts about the propriety of federal jurisdiction are to be resolved against removal. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941); *Illinois v. Ker–McGee Chemical Corp.,* 677 F.2d 571, 576 (7th Cir.), *cert. denied,* 459 U.S. 1049, 103 S.Ct. 469, 74 L.Ed.2d 618 (1982).

To be removable as a claim "arising under" federal law, "the state civil action must, as a general proposition, be founded on a federal claim or right that appears in the complaint well pleaded." 1A Moore's Federal Practice ¶ 0.160[1], at 218 (1993). The federal "controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Gully v. First Nat'l Bank,* 299 U.S. 109, 113, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936). An anticipated federal defense, like preemption, does not nullify the well-pleaded complaint rule "even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987).

There is, however, a narrow corollary to this rule, upon which defendant relies. This corollary is the doctrine of "complete preemption." The doctrine was succinctly stated by the Supreme Court in the *Caterpillar* case:

> On occasion, the Court has concluded that the pre-emptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one

stating a federal claim for purposes of the well-pleaded complaint rule." ... Once an area of state law has been completely preempted, any claim purportedly based on that pre-empted state law is considered from its inception, a federal claim, and therefore arises under federal law.

*Id.* (citations omitted). The complete preemption doctrine permits the federal court "to look at the true nature of the plaintiff's complaint when the plaintiff has attempted to avoid a federal cause of action by relying solely on state law in the complaint." *Garibaldi v. Lucky Food Stores, Inc.,* 726 F.2d 1367, 1370 (9th Cir.1984), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985). As more fully discussed below, the "touchstone" of this doctrine is not whether it is "obvious" that the state claim is preempted, but instead whether Congress intended state claims so preempted to be removable. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 66, 107 S.Ct. 1542, 1548, 95 L.Ed.2d 55 (1987); *id.* at 67, 107 S.Ct. at 1548 (Brennan, J., concurring).

**B.**

The Supreme Court has found complete preemption in only three situations: 1) under § 301 of the Labor Management Relations Act of 1947 ("LMRA"), *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); 2) under § 502(a) of the Employee Retirement Income Security Act ("ERISA"), *Metropolitan Life Ins. Co. v. Taylor, supra;* and 3) in cases involving Native American land rights conferred by treaty, *Oneida Indian Nation of New York v. County of Oneida,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974).[3] *See Queen v. City of Detroit,* 874 F.2d 332, 342 (6th Cir.1989).

The complete preemption doctrine is applied primarily in cases raising claims preempted by § 301 of the LMRA. *Cater-*

---

3. Even though it did not concern removal jurisdiction, *Oneida* is considered a complete preemption case. *See Franchise Tax,* 463 U.S. at 23, 103 S.Ct. at 2480 n. 25; *Queen v. City of Detroit,* 874 F.2d 332, 342 (6th Cir.1989). The case concerned whether a complaint filed in federal district court to determine title to land conveyed to

Native American tribes "arose under" federal law. The Court held that the right to possession of Native American lands "arises under" federal law even if the complaint states only state causes of action. *Oneida,* 414 U.S. at 667, 94 S.Ct. at 777.

*pillar,* 482 U.S. at 393, 107 S.Ct. at 2430. *See also Metropolitan Life,* 481 U.S. at 64, 107 S.Ct. at 1546 ("For 20 years, this Court has singled out claims pre-empted by § 301 of the LMRA for such special treatment."). In *Avco, supra,* an employer filed a claim in state court seeking to enjoin a strike by the employee's union. The union removed the action to federal district court. At the center of the dispute was the effect of the "no strike" clause contained in the collective bargaining agreement. The Supreme Court held that removal was proper because the employer's state cause of action was completely preempted by § 301 of the LMRA, which "was fashioned by Congress to place sanctions behind agreements to arbitrate grievance disputes." *Id.,* 390 U.S. at 559, 88 S.Ct. at 1237. Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer an a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect of the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). In a later case, the Court observed that the preemptive force of this provision "is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Franchise Tax,* 463 U.S. at 23, 103 S.Ct. at 2853.

In *Metropolitan Life, supra,* the Court extended the *Avco* complete preemption doctrine to claims coming under § 502 of ERISA. The Court found that suits by pension plan beneficiaries to recover benefits from an ERISA–covered plan, fall "directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes." *Id.,* 481 U.S. at 62–63, 107 S.Ct. at 1546.

Despite the "unique pre-emptive force of ERISA," the Court was "reluctant to find that extraordinary pre-emptive power, such has been found with respect to § 301 of the LMRA." *Id.,* 481 U.S. at 65, 107 S.Ct. at 1547. However, it found that the jurisdictional subsection of § 502 of ERISA, "closely parallels that of § 301 of the LMRA." *Id.* That subsection, § 502(f), provides:

> The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action.

29 U.S.C. § 1132(f). The Court also cited a House Conference Report on § 502 of ERISA which specifically referred to § 301 of the LMRA:

> All such actions [to enforce benefit rights or to recover benefits] in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor–Management Relations Act of 1947.

*Metropolitan Life,* 481 U.S. at 65–66, 107 S.Ct. at 1547 (quoting H.R.Conf.Rep. No. 93–1280, p. 327 (1974)).

The Court concluded that these authorities indicated a clear Congressional intent to have actions arising under § 502(a) of ERISA treated the same as actions arising under § 301 of the LMRA. Specifically, "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court." *Id.,* 481 U.S. at 66, 107 S.Ct. at 1548.

The Supreme Court's grudging approach to complete preemption is exemplified by the *Franchise Tax* and *Caterpillar* cases. In *Franchise Tax, supra,* which involved a suit by the state to enforce tax levies against an employee pension plan, the Court read § 502(a) of ERISA narrowly to save those state causes of action not expressly preempted. *Franchise Tax,* 463 U.S. at 22–27, 103 S.Ct. at 2853–55. In *Caterpillar, supra,* the Court held that the fact that an affirmative defense required reference to the terms of a collective bargaining agreement was not sufficient to turn plaintiff's state law breach of contract claims into a claim arising under § 301 of the LMRA. *Caterpillar,* 482 U.S. at 398–99, 107 S.Ct. at 2432–33. These two

cases suggest that, even in established areas, the Supreme Court feels that use of the complete preemption doctrine is appropriate in only the clearest cases.

### C.

Notwithstanding the Supreme Court's conservative approach, lower federal courts have found complete preemption in other areas of federal law. Of particular importance to this case, a number of lower courts have found that §§ 85 and 86 of the National Bank Act ("NBA") and § 521 of DIDA completely preempt state laws as applied to different federally-insured financial institutions. *See, e.g., M. Nahas & Co., Inc. v. First Nat'l Bank of Hot Springs,* 930 F.2d 608 (8th Cir.1991); *Hill v. Chemical Bank,* 799 F.Supp. 948 (D.Minn.1992). Defendant argues that because the language and effect of § 523 is substantially similar to that of §§ 85 and 86 of the NBA and § 521 of DIDA, these cases establish that § 523 completely preempts plaintiff's state law claims in this case.

In *M. Nahas, supra,* the plaintiff brought suit in state court against a national bank claiming that the bank charged an interest rate which was usurious under Arkansas law. The bank removed the action to federal district court and the court denied the plaintiff's motion to remand. *Id.,* 930 F.2d at 609, 611. The Eighth Circuit affirmed. It found that §§ 85 and 86 of the NBA were intended by Congress to completely preempt state usury laws and left " 'no room for varying state penalties.' " *Id.* at 610 (quoting *First Nat'l Bank in Mena v. Nowlin,* 509 F.2d 872, 881 (8th Cir.1975)). The court reasoned that § 86 provides an exclusive federal remedy created to "prevent the application of overly-punitive state law usury penalties against national banks." *Id.* at 612. "Thus," the court held, "whether or not plaintiff artfully attempted to couch its complaint wholly in state law terms, it was necessarily federal in nature and properly removable." *Id.*

*M. Nahas* spawned a number of district court decisions holding that the NBA completely preempts state laws that operate to limit or prohibit late fees charged by national banks. *See Goehl v. Mellon Bank (DE),* 825 F.Supp. 1239 (E.D.Pa.1993) (plaintiff's state law claim that late fees violated state law was completely preempted by NBA); *Ament v. PNC Nat'l Bank,* 825 F.Supp. 1243 (W.D.Pa. 1992) (same); *Nelson v. Citibank (South Dakota) N.A.,* 794 F.Supp. 312 (D.Minn.1992) (same).

In *Hill, supra,* the district court extended the *M. Nahas* holding to § 521 of DIDA. In *Hill,* Minnesota residents filed suit in state court against state-chartered, federally-insured banks. The plaintiffs alleged that late fees and "overlimit" charges violated Minnesota law. Defendants removed the action to federal court. The court found § 521 of DIDA to be "substantially identical to the language of §§ 85 and 86 of the National Bank Act." *Id.* at 952. Following *M. Nahas,* binding authority in its circuit, the court concluded that, "like § 86 [of the NBA], § 521(b) creates an exclusive federal remedy" and, therefore, "completely preempts the field of usury claims against federally-insured state banks" *Id.*

These cases are not binding on this court and do not convince the court that § 523 completely preempts all state causes of action brought under Cal.Civ.Code § 1671. None of the cases point to evidence that Congress clearly intended to make state causes of action within the scope of § 523 removable to federal court. Because such intent is the "touchstone" of the complete preemption doctrine, *Metropolitan Life,* 481 U.S. at 66, 107 S.Ct. at 1548; *id.,* 481 U.S. at 67, 107 S.Ct. at 1548 (Brennan, J., concurring), these cases are not particularly persuasive.

Defendant also relies heavily on *Greenwood Trust Co. v. Massachusetts,* 971 F.2d 818 (1st Cir.1992), *cert. denied,* ─── U.S. ───, 113 S.Ct. 974, 122 L.Ed.2d 129 (1993). In that case, a state chartered, federally insured bank brought a declaratory judgment action in federal district court challenging Massachusetts' flat statutory ban on credit card late fees.[4] The bank argued that

---

**4.** The Massachusetts law provided in part:

No creditor shall impose a delinquency charge, late charge, or similar charge on loans made

§ 521 of DIDA preempted the Massachusetts statute. The First Circuit held that late fees were "interest" as the word is used in § 521 and that the state statute, therefore, was preempted. *Id.* at 831.

Because the *Greenwood Trust* action was initiated in ·federal court, neither removal jurisdiction nor the doctrine of complete preemption were issues in the case. The court of appeals reached its conclusion through the application of general, well-established principles of federal preemption. *Id.* at 822–23. It neither discussed complete preemption nor cited any of the Supreme Court's complete preemption cases. Accordingly, other than informing the court of defendant's position on garden-variety federal preemption, which is not a basis for removal jurisdiction,[5] the case adds little to defendant's argument.[6]

### D.

 Paraphrasing the *Metropolitan Life* test, the Ninth Circuit has stated that "[t]he test is whether Congress clearly manifested an intent to convert [plaintiff's] state law claims into federal-question claims." *Holman v. Laulo–Rowe Agency,* 994 F.2d 666, 668 (9th Cir.1993).[7] The dispositive

question is, thus, whether there is a clear manifestation of congressional intent to give § 523 such extraordinary preemptive force that it turns claims against federally-insured credit unions, which are based on general state contract law, into claims arising under federal law.

### 1.

Section 523 of DIDA was codified in the Federal Credit Union Act at 12 U.S.C. § 1785(g). It establishes the maximum rate of interest that can be charged by federally-insured credit unions. That rate is equal to the rate permitted by the laws of the state in which the credit union is located or one percent over the discount rate on ninety-day commercial paper issued by the Federal Reserve bank of the district in which the credit union is located, whichever is greater. The statute expressly preempts conflicting state laws.[8] It also creates a private federal remedy and limitations period for actions arising under its provisions. A plaintiff may recover from a credit union twice the interest paid if the interest rate is found to exceed the rate permitted.[9] The apparent purpose of the

pursuant to ... an open end credit plan. *Greenwood Trust,* 971 F.2d at 822 (quoting Mass. Gen.L. ch. 140, § 114B).

5. "The fact that [plaintiff's] claim under state law may be defeated because of the preemptive effect of federal banking laws does not mean that such federal laws provide the basis of the cause of action, as in the case of § 301 of the LMRA." *United Jersey Banks v. Parell,* 783 F.2d 360, 367 (3d Cir.1986).

6. A letter written by the FDIC's general counsel and submitted to the court by defendant, is not persuasive for the same reasons. The letter addresses the substantive preemptive effect of § 521 of DIDA on common law prohibitions of certain bank charges. The letter does not address the jurisdictional concept of complete preemption. Because it is not on point, the court need not consider the deference it is to be afforded.

7. This is the test for complete preemption. A complaint that states only state causes of action may also be removed if "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims." *Franchise Tax,* 463 U.S. at 13, 103 S.Ct. at 2348. This potential ground for

federal jurisdiction is not urged by defendant, does not appear to exist, and will not be addressed. *Cf. Ament v. PNC National Bank,* 825 F.Supp. 1243, 1247 (W.D.Pa.1992).

8. 12 U.S.C. § 1785(g)(1) provides:

If the applicable rate prescribed in this subsection exceeds the rate an insured credit union would be permitted to share in the absence of this subsection, such credit union may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this subsection, take, receive, reserve, and charge on any loan, interest at a rate of not more than 1 per centum in excess of the discount rate on a ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such insured credit union is located or at the rate allowed by the laws of the State, territory, or district where such credit union is located, whichever may be greater.

9. 12 U.S.C. § 1785(g)(2) provides:

If the rate prescribed in paragraph (1) exceeds the rate such credit union would be permitted to charge in the absence of this subsection, and such State fixed rate is thereby preempted by the rate described in paragraph (1), the taking,

legislation was to place all federally-insured financial institutions on a level playing field with the other institutions with which they compete. *See Greenwood Trust,* 971 F.2d at 826 (citing the Congressional Record); *Hill,* 799 F.Supp. at 951 n. 5 (same).

**2.**

■ Cal.Civ.Code § 1671 limits the ability of contracting parties to agree to liquidated damages clauses. Section 1671(d) provides that in certain circumstances, liquidated damages clauses are void unless the parties agree to an amount of damages which reflect an estimate of the damages actually sustained and "it would be impracticable or extremely difficult to fix the actual damage." Cal.Civ.Code § 1671(d). The purpose of this statute, and the common law rule on which it was based, is to void damages that are considered penal in nature. *See* Dobbs, Remedies § 12.5, at 821 (1973) ("The law has opposed the use of agreed damages clauses to fix damages that are considered 'penal' in nature."). *See generally Better Food Markets, Inc. v. American Dist. Tel. Co.,* 40 Cal.2d 179, 184, 253 P.2d 10, 13–14 (1953); *Sybron Corp. v. Clark Hospital Supply Corp.,* 76 Cal.App.3d 896, 900, 143 Cal.Rptr. 306 (1978). Such laws invalidate agreements that are "intended, not to furnish a convenient measure of actual damages, but to exert an *in terrorem* effect and compel compliance with the contract." Dobbs at 821.

In *Perdue v. Crocker Nat'l Bank,* 38 Cal.3d 913, 216 Cal.Rptr. 345, 702 P.2d 503 (1985), appeal dismissed, 475 U.S. 1001, 106 S.Ct. 1170, 89 L.Ed.2d 290 (1986), the California Supreme Court considered whether certain state causes of action were preempted by different federal banking statutes and administrative regulations, including DIDA. The class action suit challenged the validity of charges imposed by the defendant bank for checks drawn on accounts with insufficient funds. The plaintiff asserted five causes of action arising under California law, including a claim that the charges were penalties in violation of Cal.Civ.Code § 1671. Defendant argued that DIDA had a broad deregulatory purpose designed to increase competition, which foreclosed the continuing application of state law to certain bank services. *Perdue,* 38 Cal.3d at 934, 943, 216 Cal.Rptr. at 359–61, 366, 702 P.2d at 517–18, 524.

The court held that the bank charges did not constitute illegal liquidated damages, but found that the other state causes of action—that the charges were oppressive, unreasonable, and unconscionable, and that the bank performed acts of unfair competition—were not preempted by DIDA:

> *Those provisions are part of the common law governing all commercial transactions; they regulate not only sale of bank services, but the sale of groceries, automobiles, furniture or medical services.* The duty of good faith and fair dealing, and protection against unreasonable contracts, has never been thought incompatible with a free and competitive market. Defendant is really asking for a market free of those restraints against oppression and overreaching applicable to all other commercial operations. We find no indication that Congress envisioned not only a free and competitive market, but one freer than any other market.

*Id.,* 38 Cal.3d at 943, 216 Cal.Rptr. at 366–67, 702 P.2d at 524–25 (emphasis added). The unanimous court recognized that while DIDA expressly preempted state usury laws, its preemptive force does not extend to all state regulation of bank services. *Id.,* 38 Cal.3d at 940, 216 Cal.Rptr. at 364–66, 702 P.2d at 522–23 (DIDA "deliberately left in effect other provisions of state law regulating charges in contracts between banks and borrowers").

This perspective is compelling. While there is evidence that Congress has chosen to preempt state usury laws—especially interest rate controls—as applied to national banks and other federally-insured financial institutions, there is absolutely no indication

---

receiving, reserving, or charging a greater rate than is allowed by paragraph (1), when knowingly done, shall be deemed a forfeiture of the entire interest which the loan carries with it, or which has been agreed to be paid thereon. If such greater rate of interest has been paid, the person who paid it may recover, in a civil action commenced in a court of appropriate jurisdiction not later than two years after the date of such payment, an amount equal to twice the amount of interest paid from the credit union taking or receiving such interest.

that Congress intended to *completely* preempt laws which set the general rules of contract. Cal.Civ.Code § 1671 applies generally to agreements governed by California law, it is neither directed toward nor limited to those contracts entered into by financial institutions. It does not specifically govern late fees, interest rates, or any other incident of business unique to credit unions.

Further, this is not a situation in which the federal government has stepped in to completely regulate the area of law. Congress has not undertaken the regulation of credit unions to nearly the same extent as it has employee pension plans or collective bargaining agreements. The states have remained the primary government regulator of credit union activities. *See, e.g.,* Cal.Fin.Code § 14000, *et seq.* (California statutes regulating credit unions).

### 3.

The instances in which the Supreme Court has found complete preemption lead the court away from the position advocated by defendant. Both *Avco* (§ 301 of the LMRA) and *Metropolitan Life* (§ 502 of ERISA) involved almost identical statutory language specifically granting jurisdiction to "the district courts of the United States," "without respect to the amount in controversy" or "the citizenship of the parties." ERISA § 502(f), 29 U.S.C. § 1132(f);[10] LMRA § 301(a), 29 U.S.C. § 185(a).[11] Section 523(b) of DIDA, in contrast, provides in relevant part:

> If such greater rate of interest has been paid, the person who paid it may recover, in a civil action commenced *in a court of appropriate jurisdiction* not later than two years after the date of such payment, an amount equal to twice the amount of interest paid from the credit union taking or receiving such interest.

12 U.S.C. § 1785(g) (emphasis added).

The substantial difference between the jurisdictional provisions of DIDA and the

---

**10.** 29 U.S.C. § 1132(f) provides:

> The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action.

**11.** 29 U.S.C. § 185(a) provides:

LMRA and ERISA is significant. In *Metropolitan Life*, the Court reasoned that when Congress enacted ERISA in 1974, it specifically chose the language of § 502(f) to track the language of § 301 of the LMRA, which, under *Avco*, had been read to support complete preemption. *Metropolitan Life*, 481 U.S. at 65, 107 S.Ct. at 1547. Further, ERISA legislative history specifically referred to the "arising under" jurisdiction existing under § 301 of the LMRA. *Id.*

In stark contrast, when Congress enacted DIDA in 1980 it could have selected language which it knew from *Avco* would support complete preemption. It did not. Further, defendant has cited nothing in DIDA's legislative history which mentions "arising under" jurisdiction or compares the effect of § 523(b) to § 301 of the LMRA or § 502(f) of ERISA.

### 4.

The recent decision in *Copeland v. MBNA America, N.A.,* 820 F.Supp. 537 (D.Colo. 1993), is in accord with the reasoning and result the court reaches in this case. In *Copeland,* the plaintiff brought a class action against a national bank in state court. The state action alleged that the late fee the bank charged its credit card holders violated Colorado statutory and common law. The bank removed the action to federal district court.

The district court remanded to state court. The court held that §§ 85 and 86 of the NBA did not completely preempt the plaintiff's causes of action. *Id.* at 541. It observed that in *Avco* and *Metropolitan Life,* "complete preemption was based on the broad sweep of jurisdictional provisions, both of which were similarly worded. *Id.* at 540. The court found no such language in the NBA and, therefore, specifically rejected the cases relied upon by defendant Golden 1 in

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

this case: *Greenwood Trust, Hill* and *Nelson.*

Further, the NBA uses the specific terms "interest" and "rate of interest." The court reasoned that the plain meaning of the word "interest" does not encompass late fees. *Id.* The court found no legislative history which indicated that Congress intended late fees to be considered interest. *Id.*

The *Copeland* court concluded as this court does today:

> The dispositive question ... is whether there is a clear manifestation of congressional intent to assign a preemptive force so extraordinary to §§ 85 and 86 as to convert state law challenges to late fees into claims arising under federal jurisdiction.... This court concludes that a proposition that is not obvious from the plain meaning of the statute's language, nor from its legislative history, simply cannot be regarded as a clear manifestation of congressional intent. Therefore, complete preemption cannot provide the basis for federal jurisdiction over Copeland's claims.

*Id.* at 541 (citations and footnote omitted).

## CONCLUSION

The court finds it impossible to conclude that plaintiff's claim that his agreement with defendant contains an illegal liquidated damages clause is "necessarily federal in nature." *See Metropolitan Life,* 481 U.S. at 63–64, 107 S.Ct. at 1546. Defendant has not directed the court to any authority that demonstrates that Congress clearly intended otherwise.

 "[T]he prudent course for a federal court that does not find a *clear* congressional intent to create removal jurisdiction will be to remand the case to state court." *Id.,* 481 U.S. at 68, 107 S.Ct. at 1548 (Brennan, J., concurring) (emphasis in original). The court does not see in § 523 clear congressional intent to preempt and permit removal of state law claims against federally-insured credit unions which are brought under Cal. Civ.Code § 1671. Accordingly, the court finds that it does not have subject matter jurisdiction over this action and plaintiff's motion to remand must be granted.[12]

IT IS THEREFORE ORDERED that plaintiff's motion to remand this action to the state court pursuant to 28 U.S.C. 1447(c) be, and the same is, hereby GRANTED, and this action is REMANDED to the Superior Court of the State of California in and for the County of Sacramento.

---

12. The court makes no determination as to whether the ultimate resolution of this case will turn on state or federal law. In fact, given that the court finds that it does not have subject matter jurisdiction, it would be inappropriate to express any view on whether § 523 preempts Cal.Civ.Code § 1671 in this case. The Superior Court may hold that it does or it does not. Ordinary preemption is substantive and occurs with some frequency. *See Greenwood Trust,* 971 F.2d at 822. However, simply because the Superior Court might find preemption is not ground for removal jurisdiction. *See Caterpillar,* 482 U.S. at 398–99, 107 S.Ct. at 2432.